The first case for argument is Austin Fraase v. Advantage Credit Bureau, case number 25-1872 from the District of North Dakota. All right. Ms. Dekrug, we'll hear from you first. Good morning. You may proceed. Thank you, Your Honors, and may it please the Court, my name is Jenna Dekrug. I represent the appellant, Austin Fraase. This appeal asks two questions. First, did the District Court err in ruling that for purposes of 1681eb of the Fair Credit Reporting Act that Advantage's reporting procedures were reasonable as a matter of law, making credibility determinations to support that ruling, and finding in favor of the move-on, even though federal courts agree that reasonableness of procedures are almost always a question for the jury? And the second question, did the District Court err when concluding that plaintiff could not prove he was injured by Advantage's erroneous reporting because it disregarded certain categories of damages, ignored evidence of plaintiff's economic damages, and imposed a legally incorrect standard for proving emotional distress damages? So starting with the issue of reasonableness, the judgment should be reversed because genuine disputes of material fact preclude deciding reasonableness as a matter of law. Specifically, the record shows conflicts as to whether it was reasonable to conclude that Austin had a criminal record when his information was put into the court system and his brother Aaron's name appeared as the response data, whether the court's public records actually displayed an alias, and whether Advantage Credit Bureau staff actually saw the information, which is a credibility determination, and whether Advantage Credit Bureau had reasonable procedures to question whether the criminal records belong to Austin, such that they should have digged deeper into the accuracy of the information reported. 1681EB requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy. Once an inaccuracy is shown, which there's no dispute of fact here, they did report an accurate information, a consumer reporting agency must establish that the actual procedures used were reasonable as a matter of law to win summary judgment. Courts agree that reasonableness is almost always a jury question unless there is no doubt that the consumer reporting agency followed reasonable procedures, and that's not the case here. There are sufficient records in the fact to show, or to at least raise a question as to the reasonableness of Advantage's procedures, some of which include Advantage not only didn't have written procedures at all, but it had no procedures in place to deal with accommodating for twins or people with common names. Similarly... Are you arguing there are factual disputes? And if so, what are the specific disputes about the reasonableness of the conduct? Yes, Your Honor. So as far as conducting the research to create a report about Mr. Frazee, Advantage testified, the 30B6 witnesses testified, that they typically spend anywhere from 30 seconds to 2 minutes to prepare a report, which tends to show that they could be spending a little more time to assure accuracy. But that's not a factual dispute. I'm wondering if you've identified factual disputes that are in play here. Yeah, so I think the key factual dispute here is whether or not an alias was reported in the public court's record. The court, the district court, took a testimony or a declaration of an employee called Trina Iverson as fact. Is there any evidence that they didn't? Absolutely, so... And what is that? The 30B6 witness, first of all, testified that there are no contemporaneous records. That's not evidence that it didn't happen, though. But there's no evidence that it did happen, either. Well, there is. You just questioned whether it's compelling or not. There's no evidence that it happened, respectfully, Your Honor. The clerk of the court from the North Dakota Municipal Court testified that she did not know whether the... She didn't know, right? She didn't say that, no, this wasn't reported. But that's a question of fact. Nobody can say affirmatively whether they saw it other than one declarant who the court made a credibility determination on. She was not a properly disclosed witness. And even if she was, that's a jury to decide whether she's being truthful when not only the 30B6 witness and one of the employees, the only one who was identified as preparing the reports, both testified they don't recall seeing it and that they possibly learned of the AKA after the lawsuit was first filed. So there is a question of fact. When you say it, what are you referring to when you say... The AKA, so the alias reporting. So Mr. Frasey's twin brother was reported, had a speeding record. A search was done under Austin Frasey's name and his brother, Aaron Frasey's record pulled up and was reported. Post hoc evidence was introduced by Advantage Credit Bureau saying when they looked up the record, Mr. Frasey was reported as an AKA to his brother. There were internal court records, internal only, to show that there was an AKA reported for Austin and Aaron. However, the records show, and this is an important distinction, that Austin was reported as an alias to his brother Aaron and not vice versa. So Aaron was not reported as an AKA to his brother Austin. This matters because if you look at the record, Appendix 342, there is a search that you can see was conducted. It's not at the time the reports were created in May of 2023, it's after they were sued in June 2023, showing that they typed in Austin Frasey and then his date of birth and that Aaron's record show up. In that record, there is nothing that says AKA. So that should have called into question for the employees conducting the research to create the report, why is the first name not matching? This isn't a common alias like John and Jonathan or Sam and Samuel. I don't know anybody who goes by Austin and their name is Aaron or vice versa, which should have prompted Advantage to look further into this. Along that same vein, excuse me. Was there any testimony that the process that is used within the court system automatically pulls up an alias when you put in, if you put in Austin, that it will automatically pull up the alias as well? There is not testimony directly on that point. The clerk of the court only was able to say they were reported as a mixed jacket, is how individual, but she could not say or did not know whether, first of all, the internal information showing the AKA was public facing and didn't have a lot of information to provide about how AKAs generally report. So I think something else to raise here is that we're not saying Advantage can't generally rely on court records. Court records are inherently reliable, but when there's an inconsistency on its face like there was here, there is a duty to dig further. Advantage, the day after it got sued, contacted the court and the police department and figured out pretty quick what had happened. They could have done that on the front end. Mr. Campbell, the 30 v. 6 witness, testified that there was nothing stopping the researchers from contacting the court on the front end. And we don't think that they need to do that in every case. Just, again, in cases where there are facial inconsistencies. Among the other inconsistencies here, the record that populated was a speeding record for speeding for 24 miles over the speed limit. Advantage also obtained a motor vehicle report from Samba Safety, so not the court, a different source altogether that showed a clean motor vehicle record. And in the report, so if you look at the May 11th and May 15th reports, that's Appendix 1198 and 1670, it shows there is a clean motor vehicle record, but then also a criminal charge of speeding. Those two things can exist simultaneously, which was another facial inconsistency where they should have said, hmm, this is weird, Aaron and Austin, not the same name. Speeding record, clean motor vehicle record, let's reconcile that. What's your best authority for that proposition you just made that when there's a... The facial inconsistency? The facial inconsistency. Where do I look for the kind of clearest standard that we should apply? So if you looked at Ride Home v. Equifax, which is an Eighth Circuit case, it does stand for the proposition that even if a CRA is not necessarily... If they're able to rely on reputable sources like a court, they have a duty to look beyond when there are inconsistencies on their face, and that Ride Home cites to right, which is a Tenth Circuit authority case. Circling to the issue of damages, the court, the district court in deciding whether or not Mr. Frasey pled sufficient evidence to suffer damages, it dismissed information that called, again, questions of fact into place. So first, the court improperly held that there was no evidence that Mr. Frasey's employment was delayed at all, but... As I understand it, the only evidence there was was his sort of speculation about that. Was there evidence from the employer that said something like... Because this is, after all, a speeding ticket. This is not a murder conviction. Yes, but it's a job that involves driving, so... Okay, anything from the employer? It is all mostly speculation. However, there's nothing that affirmatively states in the record that his employment was not delayed other than a very wish-washy 30 v. 60. You have to put on some evidence beyond speculation, don't you think? Fair, but aside from that, there is a question of fact. Even if there wasn't, say you don't find that argument compelling, under the Fair Credit Reporting Act, emotional distress damages are sufficient to count as damages. Okay, so again, there we have some pretty minor stuff. He was bummed out the next day, or a couple of things like that are pretty thin. Respectfully, it was more than just the next day. We have corroborating witnesses, we have two declarations, and this circuit has made clear that not only severe emotional distress is sufficient to raise damages... What was severe about this? I mean, he came home uncharacteristically sarcastic. And tired, this court... I mean, I suffer from those damages on a regular basis, right? And I don't mean to make fun of it, but I'm trying to figure out where the severe emotional distress is in the record. Well, again, this circuit has made clear that if there is outward manifestation, it does not need to be medical damages. There doesn't need to be a problem with a medical note. Right, and we've said that corroboration is important, but isn't there still some sort of inherent requirement that the corroboration need be about something severe? Maybe I shouldn't have used the word severe, because I don't think that's verbatim what the standard is. So let me walk that back a little bit. Well, we certainly use that word in our cases. In some of them, but there have been cases where things like sleep loss has been sufficient, and not only in his complaint does he allege sleep loss, but his fiancee also corroborates that by testifying he was taking additional naps. That's an outward manifestation. It doesn't have to be, again, medical records. He didn't need to be crying, throwing up, anything like that, but it was over an extended period of time. There were observations, and again, this is a credibility determination, and there was a sufficient question of fact that a jury could find that Mr. Frasey was damaged by the not once, but twice inaccurate reporting conducted. I see that I am in the yellow. I would like to reserve my remaining time for rebuttal. Thank you. You may. Mr. Niemann, we'll hear from you. Thank you, Your Honors. May it please the Court. First off, I want to thank you for allowing me to substitute in for this argument. Ms. Lawson sends her apologies. She was stuck at the Orlando Airport for 12 hours yesterday, given the madness of the TSA and weather. Thank you for allowing me the opportunity to substitute in last minute here. The District Court in this case properly granted Vantage Credit Bureau's summary judgment motion after examining the totality of their record and determining that there was no genuine issue, material fact, and dispute, and that Appellant Frase had failed to present evidence to support his claims. The District Court had before it competing motions for summary judgment. Even accepting all arguments in the light most favorable to the moving party, the District Court could not identify any record evidence to support Frase's claims that Vantage Credit failed to follow reasonable procedures in preparing his consumer reports for the Fargo Park District or that Frase suffered any concrete actual damages. Do you agree as a matter of law that if there are facial inconsistencies returned that additional efforts are required in order to make the search reasonable? In some instances, there may be an additional obligation. For example, if you're reporting somebody as dead and alive at the same time, but I disagree with the premise. Do you think there were facial inconsistencies reported here? There is no evidence in the record to suggest that there were facial inconsistencies. Rather, much like a trimers report that's common in the industry, ACB simply pulled from two different sources, one of which may have been more complete than the other. So the speeding ticket appeared in the criminal traffic search, but not on the record appeared That, in your view, is inconsistent. It's, how would you describe it? That one source pulled in information that the other source did not have. Wouldn't the speeding ticket be likely, be very likely to be on a traffic report or not? It would not, Your Honor. So there's testimony in the record from multiple ACB employees as to the fact that this was relatively a common occurrence, that one source would pick up a speeding ticket and the other would not. What about the difference in the names? You type in Austin and the name Aaron pops up. Shouldn't that create some reason to dig a little deeper? So, Your Honor, the county court clerk who provided testimony in this case explained that an alias or an AKA reporting was, in essence, the court was treating these two individuals as if they were the same person. So they, in grouping them into the same jacket, the court is reporting that Austin and Aaron are one single person and, therefore, ACB's reporting accurately reflected what appeared on the court record at the time. So there's not an inconsistency. They're treating these as if they were the same person, like Charlie or Charles or, you know, nicknames can come up for a variety of reasons. And in relying on this presumptively reliable court record that was obtained from the public docket, that faithfully represented what was being reported by the court at that time. The record in this case shows that the parties did not have a dispute regarding material facts, really the sufficiency of those facts to support Frey's claims. Parties have agreed here, ACB matched a speeding record to Frey's that belonged to his twin brother because of an alias match. And as I just mentioned, the West Park Municipal Court was treating these two individuals as the same person and, thereby, grouped them into the same jacket. And for that reason, the court listed Austin Stewart Frey's, also known as Aaron Stewart Frey's, on the docket at the time the reports were prepared. ACB prepared two reports, one on May 11th and one on May 15th, and both of these reports were prepared manually using a search of these public records. ACB employed an exact match policy requiring the record to match the individual's first name, last name, and full date of birth. Each ACB employee reviewed the municipal court records and independently concluded that the speeding ticket belonged to Austin Frey's because Aaron Frey's was an alias for Austin Frey's. Advantage did not maintain a copy of the North Dakota court website at the time it prepared the reports in May, but the day after receiving the complaint on June 23rd, 2023, it produced a copy or saved a copy of the search results on the website showing that the record was obtained based on the exact search for first name, last name, and full date of birth. And the court has also provided the Odyssey View document showing that Austin Frey's was an AKA of Aaron Frey's prior to August 9th of 2023. This Odyssey information is then fed into the public website that's accessible to users. Based on these uncontroverted facts, the district court found there was no genuine dispute that the North Dakota website indicated Austin Frey's was an AKA of Aaron Frey's of May of 2023. The district court relied on a plethora of case law to determine that in making this match, ACB acted reasonably by associating the records with Austin. One such case is Henson, the Seminole Seventh Circuit decision, which has been relied on and endorsed by this circuit and many others across the country. In that case, the Seventh Circuit held as a matter of law, a CRA or credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's may be inaccurate. And I'll note that this lawsuit was the first notice that ACB received of a potential inaccuracy in this case. Plaintiff never reached out to submit a dispute as is contemplated by the FCRA. In Quinn, a Northern District of Illinois decision that the court also relied on, a summary judgment case, the court expressly rejected arguments that Henson should be limited specifically to court judgment dockets. Finding that reasonableness of CRA's procedures when it's beyond question that it is reasonable, summary judgment should be appropriate. And so that case, Henson was applied to the context of information received from Wal-Mart who is a furnisher of credit information. Again, this decision reiterates the fact that unless a CRA has reason to know about systematic issues or potential inaccuracy in a reasonably reliable source, like public court records, they cannot be held liable under the FCRA. Next, the court relied on McCann, which is very analogous to the present case. At the motion to dismiss stage, much like Henson, a plaintiff took issue with the reporting of a crime as sexually motivated. The McCann court applied the Henson ruling, much as the Eighth Circuit had already endorsed, looking, assessing arguments of whether there was a duty to investigate beyond the contents of online court documents. So analogous to here, the information was reported based on the online docket that the CRA had accessed. The court granted the motion to dismiss, finding that, like here, the filing of litigation was the first notice of a potential inaccuracy, and then noting it would be inherently unreasonable to ask defendants to dispatch agents to county courthouses to make individual inquiries concerning every person concerned with the crime. The same is true here. There are some arguments that ACB should have gone and obtained a physical copy of the court records. That's not required under this well-established line of cases. If your line of presumptively reliable source and you're correctly reporting the information that's held there, there's no further obligation and your actions are reasonable as a matter of law. And then, two, the ride-home decision of the Eighth Circuit, a 2022 case, once again applied to the principles from Henson, again affirming that the death series had a strict liability statute and that information obtained from a source the CRA reasonably believes is accurate will not impose liability if it turns out to contain an inaccuracy unless there's some notice of systematic problems with procedures. The facts are analogous to those here. The court there extended the Henson rationale and decision beyond the context of even court records there. It involved records obtained from Wells Fargo and other furniture of credit information, emphasizing what the FCRA requires is reasonable, not perfect procedures. I would also note that Judge Kobes appended dissent in the case, which raises similar damages issues to those found here. Like I mentioned, ride-home was in motion to dismiss the case. But as Gerardo pointed out, under the Twombly heightened pleading standard of Twombly, conclusory allegations regarding emotional distress, humiliation, and mental anguish are insufficient to state a claim at that stage, let alone at summary judgment where plaintiff has had the opportunity to present evidence of emotional distress, of concrete emotional, genuine emotional harm as is required by this court under Taylor and Peterson. What's your point there, that we should follow the dissent in that case? I think that the dissent is instructive. So I would, the court could follow as precedent in Peterson and Taylor v. Tenant Tracker. Those are two other Eighth Circuit decisions on damages. But the dissent is instructive in that Judge Kobes raised issues with standing and said that he would have dismissed the claims on that basis. Pointing out that analogous allegations of damages to those found here, you know, kind of conclusory allegations of severe emotional distress, emotional harm. I just don't understand how we could follow the dissent rather than the opinion of the court. So the dissent kind of touches on a different issue that ties into the district court's dismissal on the basis of damages. Okay. And lastly, I'll briefly note, Fraze has argued in this case that the source is perhaps not presumptively reliable because it wasn't the official physical court record. The district court relied on Stewart as an instructive decision on this point. And I'll note too that plaintiff's own expert has recognized that virtually every court website includes a similar, the same disclaimer to that present on the North Dakota court website used by ACB here. And as Stewart also recognized too, courts routinely will use this type of summary court information found on online dockets for critical decisions like sentencing or bail. So if it's reasonable for that context, it certainly is for a CRA preparing a background check. Turning to the point of damages, the district court did not err when it held that even if ACB did not maintain reasonable procedures, Fraze's claims also failed because he could not show actual damages. To maintain a claim for negligent violation of the FCRA, plaintiff must offer proof of actual damages sustained by the consumer that were caused by the failure of the CRA to maintain reasonable procedures. While emotional distress under some circumstances can be sufficient to show actual damages, the plaintiff must provide evidence of concrete emotional distress. After reviewing all the record evidence in this case, the district court properly determined that beyond Fraze's belief that there was a real possibility he would have begun his full-time position sooner if not for the inaccurate background check, he provided no evidence that the background report impacted his hiring timeline. Stacey Kruger, likewise, testified. Ms. Kruger is the Fargo Parks District Corporate Representative and HR Director. She said an uncontroverted testimony that Fraze's background check did not impact his full-time hiring position start date and that the Fargo Parks District background check policy does not list speeding violations as prohibited conduct. This led the district court to conclude that on this record, Fraze did not show a genuine dispute of material facts and that advantaged in that cause, Fraze has suffered a lost week of wages. His subjective belief that he should have started his full-time position sooner is really insufficient to survive summary judgment. The district court also properly held that the evidence of emotional distress here is, quote, not the sort of concrete emotional distress that is required to constitute a genuine injury and actual damages. Key to the court's holding on emotional distress is the fact that plaintiff received his job offer a mere six days after his interview and the fact that he never sought medical treatment for his alleged emotional damages. This conclusion is supported by this, by multiple decisions from this court. But we do have corroboration here, right? In some of our cases, we fault the plaintiff for a lack of corroboration. And here the record does have, I forget if they're affidavits or, but anyway, there's testimony of some sort from family members. Why isn't that enough? Yes, Your Honor, that's a good question. And the reason that that's enough, as I was going to get into here, is while I do believe that these affidavits are unpersuasive and likely insufficient standing on their own, there is the issue of causation. So these line of cases recognize in the Eighth Circuit that there needs to be emotional distress damages, but those damages must have been caused by the CRA's allegedly unreasonable procedures. And here we simply don't have that. As the district court noted, Mr. Frazee got his job offer, you know, within the standard hiring time frame of six days after his interview, and the affidavits mention alleged emotional issues for a month afterwards. So it's simply, there's simply no evidence in the record to causally link the damages that he's claiming here to Advantage Credit Bureau's allegedly unreasonable procedures. Well, the timing coincides, doesn't it? And he's claiming it's causally related. I guess I'm wondering what additional evidence is missing there. The evidence that's missing... I mean, if I'm right, I mean, those, that corroborating evidence was immediately following the receipt of these reports, these two reports. Isn't that right? Yes. So he hasn't specifically linked it to Advantage Credit Bureau's procedures. We don't know if, for example, he was upset with his brother or upset with the court. He hasn't linked it specifically to our client, the CBO. Well, I mean, he has, but are you saying that had his family member said, he told me this was a result of the, you know, falsely reported speeding ticket, that would be enough? I don't think that would be sufficient either, both because the type of damages claimed both in these affidavits and Mr. Frazee's own testimony are the sort of conclusory and not genuine or concrete allegations. But I also still think that he's failed to establish the lack of a genuine dispute as to causation, that our procedures are the cause of his emotional distress and not the court or not. His brother being upset with him for potentially using his name as an alias. All right. Thank you for your argument. Yep. Thank you. We'll hear Rebecca. Thank you, Your Honors. I would like to briefly just circle back to the whole dispute of whether this alias was reported or not. If we were to accept that this alias information was publicly available, the court's logic was that the court clerk produced this odyssey document, which is AB1664, and that this document, the data contained within it, was basically dumped into the public website. If you look at that document, you will see it shows Aaron Frazee and Austin Frazee reported as AKAs, but with two different driver's license numbers. That also was a facial inconsistency. On top of the inconsistent speeding record with the motor vehicle record, that advantage should have looked into. So if we're going to accept as true that this AKA was seen by some declarant who produced her declaration a year after the events occurred, then we also have to accept that there were two different driver's license numbers in the record. I would also like to just briefly address a couple of points brought up by the appellee. So first of all, Henson, the standard for Henson was misstated. Henson does not say that notice by a consumer is required. That would be the standard under a 1681I claim. This is a 1681EB claim. Henson does stand for the proposition that there should be some sort of notice that there is some sort of inaccuracy or inconsistency within the report, which again here we can cite to the different names, the different driver's license numbers, the motor vehicle record inconsistency, et cetera. McCann also supports plaintiff's or repellent's argument that there is a duty to look further when there are facial inconsistencies. So not to beat a dead horse, but we've seen the facial inconsistencies throughout. So what is it that you think they should have done in the face of the inconsistency, the two numbers, et cetera? Probably exactly what they did the day after they got sued. Called the court, asked the question, they figured it out literally one day after. Mr. Frasey filed his lawsuit on June 22nd and the email from Ms. Admonson saying, notifying Fargo Parks that the record was inaccurate, it's from the 23rd and it says we called the police department and the courthouse and this is what happened. So she could have spent, what, maybe 10 minutes to figure it out. It took her a day after getting sued and we don't even know if they were properly served at that point. So that's all that needed to be done. We're not asking that they do it for every single case and every single record being searched, but when there's an inconsistency. That's kind of where I'm going. What if one shows a person 5'8", 145 and then there's another one that's 5'9", 185, do they have to dig into the details on every single traffic ticket like that? No, certainly not. But a first name being different is far different than maybe someone being 5'2", 5'3". Except it's noted as an alias, right? So I mean, the fact that there are two names when the court record indicates there's an alias is not inherently suspicious. It's a step further that they had to look, you're arguing, right? Yeah. I took the last of your time, so I'm sorry. Would you like me to address your question? Go ahead. Okay. Ask the alias being shown, yeah, they should look further. They had no reason to believe that Mr. Frasey was an alias on the front end. They usually get that information from whoever is either typing in the info of the consumer they want info on. So again, thank you, Your Honor. Your Honors. Thank you. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course.